David D. Barnhorn, Esq.
Romero Law Group PLLC
490 Wheeler Road, Suite 250
Hauppauge, New York 11788
Tel.: (631) 257-5588
Email: dbarnhorn@romerolawny.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------------X

DANA JOHNSON-DANIEL,

                  Docket No.:

        Plaintiff,

    -against-                     **COMPLAINT**

SOURCE4SOLUTIONS, LLC d/b/a ESS and
RANDY SMITH,                  Jury Trial Demanded

           Defendants.

-------------------------------------------------------------------------X

Plaintiff, Dana Johnson-Daniel ("Plaintiff" or "Johnson"), by and through her counsel, the Romero Law Group PLLC, complaining of the Defendants, Source4Solutions, LLC d/b/a ESS ("ESS") and Randy Smith ("Smith") (ESS and Smith collectively as "Defendants"), alleges as follows:

## NATURE OF THE CLAIM

1.    Plaintiff brings this action to recover damages for discrimination based on her disability, failure to accommodate her disability, association with an individual with a disability, and familial status, and retaliation for engaging in protected activity in violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-12 *et seq.*, against Defendant Smith for aiding and abetting Defendant ESS's violations of the NJ LAD, and any other claim(s) that can be inferred from the facts set forth herein.

1

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

3.     Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the District of New Jersey.

4.     Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her disability, failure to accommodate her disability, association with an individual with a disability, and retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act (collectively as the "ADA") under Charge Number: 524-2023-00733.  Plaintiff's ADA claims arise out of the same transactions and events as her NJ LAD claims asserted herein.  Plaintiff will amend this Complaint to add her ADA claims to this action after receiving a Notice of Right to Sue from the EEOC.

## THE PARTIES

5.     Plaintiff Johnson is a resident of the County of Kings, State of New York.

6.     At all times relevant, Plaintiff was an employee and a person within the meaning of the NJ LAD.

7.     At all times relevant, Defendant Source4Solutions, LLC d/b/a ESS had and has its principle place of business located at 9202 S Northshore Drive, Suite 200, Knoxville, Tennessee 37922, and had and has a business location at 800 Kings Highway North, Suite 405, Cherry Hill, New Jersey 08034.

8.      At all times relevant, Defendant Source4Solutions, LLC employed more than fifteen employees.

9.      At all times relevant, Defendant Source4Solutions, LLC was and is an "employer" within the meaning of the NJ LAD.

10.     At all times relevant, Defendant Smith was and is employed by Defendant Source4Solutions, LLC as a District Manager.

11.     Defendant Smith is a resident of the State of New Jersey.

12.     At all times relevant, Defendant Smith was and is a person within the meaning of the NJ LAD.

## FACTS

13.     Defendants were and are a staffing company and one of its district managers that specialize in placing staff in daily, long-term, and permanent K-12 school district positions, including substitute teachers, paraprofessionals, and other school support staff.

14.     Plaintiff commenced her employment as a permanent paraprofessional on or about February 25, 2021.

15.     Defendants assigned Plaintiff to Clinton Elementary School in the School District of South Orange & Maplewood throughout 2021.

16.     Throughout her employment, Plaintiff performed her duties in a satisfactory manner and was qualified for her job.

17.     During her period of employment while assigned at Clinton Elementary School, Plaintiff suffered from a serious illness that caused her to attend various medical appointments and tests from time to time.  Defendants were aware of Plaintiff's illness and that she was attending medical appointments and tests to treat this illness throughout this period.

18.     In or about September 2021, during the break between the summer and fall semesters, Plaintiff's physician diagnosed her with thyroid cancer, which constitutes a disability under the NJ LAD.

19.     Promptly thereafter, on September 8, 2021, Plaintiff sought a reasonable accommodation – conduct which constitutes protected activity under the NJ LAD – by notifying Defendants, including directly notifying Defendant Smith, that she would require a period of medical leave for approximately three weeks because she was ill and was required to undergo surgery to treat her disability.

20.     On September 17, 2021, Plaintiff underwent surgery to battle thyroid cancer.

21.     Appallingly, in response, Defendants ESS sought to harass, discriminate and retaliate against Plaintiff, rather than aide her as she suffered from a disability, following her request for accommodation.

22.     Indeed, during her period of leave, Defendants pressured Plaintiff to accept a demotion to a substitute paraprofessional position, without any guaranteed hours of work during her workweeks.  Plaintiff declined this unlawful demand to accept a demotion, which Defendants sought simply because she was on medical leave for her disability.  Moreover, Plaintiff also opposed Defendants' unlawful conduct, informing Defendants that Plaintiff would commence legal action if they discriminated against her because of her disability by demoting her.

23.     On or about October 13, 2021, Plaintiff returned to work while still recovering from surgery and her disability.

24.     On that same date, on October 13, 2021, Defendants, through Defendant Smith, continued their course of discrimination and retaliation by callously issuing Plaintiff a written

4

warning for an absence on October 12, 2021 relating to treatment for her disability, which Defendants were aware of.

25.    Defendants' illogical basis of this written warning was that Plaintiff allegedly did not follow a call-out procedure announced during her medical leave on October 4, 2022, despite the reality that the alleged infraction occurred before Plaintiff returned from medical leave on or about October 13, 2022, which is the earliest date that Plaintiff could have reviewed the October 4, 2022 notice.

26.    Immediately upon her return, on or about October 13, 2022, Defendants assigned Plaintiff to work with a student that was known to engage in violence against school personnel, placing her safety and health in imminent danger.

27.    Unsurprisingly, on Plaintiff's first day assigned to this risky student, that student attacked her.  During that attack, the student struck Plaintiff's still healing surgery wounds on her neck, where Plaintiff had a visible bandage, causing her significant pain.

28.    That same day, Plaintiff requested a reasonable accommodation – again engaging in protected activity under the NJ LAD – in the form of a transfer to another classroom or student assignment that would provide a safe environment while Plaintiff healed from surgery, which was denied.

29.    On or about October 14, 2021, Plaintiff was unable to work as she was being treated at the hospital following her attack by this student, which Defendants were informed of and aware of.

30.    Moreover, due to the student's attack and Defendants' refusal to transfer Plaintiff as an accommodation, Plaintiff's physician required her to take additional medical leave as it was clear that Plaintiff's work assignment was not a safe environment to permit her to safely heal from

her major surgery and disability.  Thus, Plaintiff again sought a reasonable accommodation – constituting protected activity under the NJ LAD – for an additional period of medical leave, which commenced on or about October 15, 2021.

31.    Repeatedly during her leave from on or about October 15, 2021 through in or about January 2022, Defendants, through Defendant Smith, repeatedly contacted Plaintiff to inquire about and attempted to pressure Plaintiff to return to work from her medical leave.

32.    In or about January 2022, Plaintiff returned to work from her period of medical leave.

33.    Upon her return in or about January 2022, Defendants assigned Plaintiff to Montrose Early Childhood Center in the School District of South Orange & Maplewood.

34.    Throughout January and March 2022, Plaintiff continued to attend medical appointments and tests, as needed, while Plaintiff continued her post-operative treatment relating to her disability, which Defendants were informed of and aware of.

35.    Throughout her assignment to Montrose Early Childhood Center, despite the vast majority of its students being safe and non-violent, Defendants once again assigned Plaintiff to students with known histories of violence and dangerous behavior.  As a result, Plaintiff was subjected to numerous violent attacks by her assigned students, including students pulling Plaintiff's hair, throwing toys at her and spitting in her hair.

36.    In or about March 2022, Plaintiff repeatedly requested a reasonable accommodation on at least three occasions – yet again engaging in protected activity under the NJ LAD – in the form of a transfer to another classroom or student assignment that would provide a safe environment, or for assignment to an office setting, in order to work in an environment that

was free from danger and violence while Plaintiff continued suffering from and receiving treatment for her disability.  These requests were denied.

37.    Rather than accommodate Plaintiff, on or about March 21, 2022, Defendants directed Plaintiff not to report to work.

38.    Then, on March 22, 2022, Defendants, through Defendant Smith, informed Plaintiff that ESS was demoting her from a permanent paraprofessional to a substitute paraprofessional, without a guaranteed amount of hours during her workweeks, and inexplicably banned Plaintiff from working at Montrose Early Childhood Center.

39.    Shockingly, Defendants disingenuously sought to cast Plaintiff's unlawful demotion as an accommodation of her medical condition.

40.    Additionally, Defendants indicated that Plaintiff's demotion also allegedly stemmed, in part, from Plaintiff seeking two days off work to care for her child who was suffering from Covid 19.  Thus, this additional motivation for Plaintiff's demotion constitutes discrimination for her association with an individual with a disability and familial status, in violation of the NJ LAD.

41.    That same day, on March 22, 2022, Plaintiff responded to Defendants by complaining to Defendant Smith that this demotion constituted unlawful discrimination – conduct again constituting protected activity under the NJ LAD – due to Plaintiff's disability and medical leave, a point so obvious that it should not be required to be said.

42.    On March 23, 2022, Defendants confirmed their intention to demote Plaintiff to a substitute paraprofessional because of Plaintiff's medical condition and her ongoing need to receive medical treatment.

43. Defendants' demotion of Plaintiff from a permanent paraprofessional to a substitute paraprofessional constitutes a significant diminution of the prestige of her position and employment.

44. Moreover, the position of substitute paraprofessional does not provide any guaranteed amount of hours during Plaintiff's workweeks, instead requiring Plaintiff to locate assignments in competition with all other substitute paraprofessionals employed by ESS. These potential work assignments and the locations of these assignments change daily based on the needs of ESS and these potential assignments may or may not be available on any given day.

45. These terms of employment would result in Plaintiff receiving less hours of work each week and a significant reduction of her income.

46. Additionally, the position of substitute paraprofessional does not guarantee any particular location for Plaintiff's assignments – or any continuity of Plaintiff's student assignments – and, as a result, Plaintiff would be required to commute all over the state of New Jersey to report to available assignments, constituting a substantial increase of the time, cost and distances of Plaintiff's commutes to work compared to those positions provided to her as a permanent paraprofessional.

47. Since these exchanges, Defendants, including Defendant Smith, have sent numerous company emails relating to available assignments to its staff, making clear that ESS has available work assignments to offer to Plaintiff, but yet these positions were not offered to Plaintiff.

48. Despite this, during the remainder of the school year and summer, Defendants did not assign Plaintiff to any work assignments and did not even transfer her to the position of substitute paraprofessional that was the subject of her demotion.

49.    In reality, on or about March 23, 2022, Defendants, through Defendant Smith, unlawfully and summarily terminated Plaintiff's employment.

50.    Soon after March 23, 2022, Defendant ESS disabled Plaintiff's access to her ESS email account, evidencing that Plaintiff's alleged demotion was in fact a termination.

51.    On April 11, 2022, Plaintiff contacted Defendants, by directly contacting Defendant Smith, among others, to notify them that she had not yet been provided any work as a permanent paraprofessional or even transferred to the position of substitute paraprofessional since Plaintiff's demotion on or about March 21, 2022 through March 23, 2022.  Plaintiff also asserted that Defendants' conduct constituted unlawful retaliation.  To date, Defendants have not responded to this email, further confirming Defendants' termination of her employment with Defendant ESS.

52.    After Plaintiff's termination on March 23, 2022, Defendants continued to engage in discriminatory and retaliatory conduct.

53.    On or about August 31, 2022, Defendants, through Defendant Smith, informed Plaintiff that ESS was offering Plaintiff a position as permanent paraprofessional at Montrose Early Childhood Center in the School District of South Orange & Maplewood, her former position at her formerly assigned school where Plaintiff had suffered injury and harassment from students and discrimination and retaliation from Defendants.

54.    Prior to beginning at this position, on or about September 1, 2022, Plaintiff again requested an accommodation that she be provided an assignment that was free from harm and with a safe student or that Plaintiff be assigned to a comparable office position that would provide a safe environment so that she could continue to tend to her health.

55.    In response, Defendant ESS refused to grant this accommodation, indicating that Plaintiff could accept the position, which would require Plaintiff to work with any student assigned

regardless of whether the student was likely to harm her, or refuse the position and lose any employment with Defendant ESS.

56.     On or about September 6, 2022, Plaintiff appeared for a training course for the position as a permanent paraprofessional at Montrose Early Childhood Center, as instructed by Defendants.  However, the school rejected Plaintiff and informed her that Plaintiff was not assigned to their location and that there was no position for her to perform.  As Plaintiff learned, the entire position was a false ruse by Defendants and she was not rehired for any position. Plaintiff found this unlawful conduct both insulting and humiliating.

57.     On Thursday, September 8, 2022, during the afternoon, Defendant ESS informed Plaintiff about available clerical positions in the Elizabeth School District in Elizabeth, New Jersey.  Plaintiff promptly responded, contacting Defendant ESS later that same day expressing her interest in such a position.  Plaintiff also contacted Defendant ESS multiple times during the next week on September 12, 13 and 15, 2022, expressing her interest in such a position.  On September 16, 2022, despite Plaintiff's prompt emails, Plaintiff was informed that Defendant ESS would not hire Plaintiff for that position and never permitted Plaintiff to commence employment in one of these positions.

58.     On September 16, 2022, Defendant ESS contacted Plaintiff regarding a clerical position in another school, Dwight Morrow High School in the Englewood School District.

59.     On September 16, 2022, Plaintiffs expressed her interest in that position.  Defendant ESS subsequently informed Plaintiff that the compensation for this position was based on a *per diem* rate of pay that was well below her compensation received as paraprofessional.

60.     On September 19, 2022, this position was offered to Plaintiff.  However, this would constitute a significant reduction in Plaintiff's income for her work for this employer and constitute

a significant diminution of the prestige of this potential position.  As a result, Plaintiff did not commence employment with Defendant ESS in this position.

61.    On September 27, 2022, Defendant ESS informed Plaintiff that her employment, with respect to this clerical position, was terminated.

62.    As of this filing, Defendants have not taken any corrective action to meaningfully remedy these issues and have not assigned Plaintiff to any comparable work assignments.

63.    Throughout her employment, Plaintiff was able to and capable of – and continues to be able to and capable of – performing her duties with or without an accommodation.

64.    Based on the foregoing, Defendant ESS has engaged in discrimination against Plaintiff based on her disability, repeatedly failed to accommodate Plaintiffs' disability, discriminated against Plaintiff for her association with a person with a disability and familial status, and retaliated against Plaintiff for engaging in protected activity (including for opposing discriminatory conduct, making multiple requests for reasonable accommodations, and exercising her rights to medical leave) by, *inter alia*, demoting Plaintiff or terminating her employment, denying multiple requests for reasonable accommodations stemming from her disability, failing to rehire her into a comparable position with respect to her duties, prestige or compensation that she previously had in violation of the NJ LAD.

65.    Prior to Plaintiff's termination, Defendants did not engage in any discussions as an interactive process to explore Plaintiff's multiple requests for reasonable accommodations in the form of, *inter alia*, providing Plaintiff with an assignment that was free from harm and with a safe student that would provide a safe environment so that she could continue to tend to her health, that Plaintiff be assigned to a comparable office position that would provide a safe environment so that

11

she could continue to tend to her health, or to provide intermittent leave and/or other medical leave on an as needed basis to accommodate her disability.

66.    Moreover, as a result of Defendants' conduct after Plaintiff's termination on March 23, 2022, Defendants repeatedly failed to hire and/or re-hire Plaintiff as discrimination based on her disability, her association with a person with a disability, and/or familial status, discrimination based on its repeated failure to provide an accommodation, and engaged in retaliation against Plaintiff in violation of the NJ LAD.

67.    Alternatively, upon information and belief, Plaintiff expects that Defendants might contend that Plaintiff was not terminated on March 23, 2022 and that Plaintiff was somehow still on its books as an employee, despite failing to provide her with any work as a substitute paraprofessional or any comparable position to her employment as a permanent paraprofessional since her termination.

68.    Alternatively, while Plaintiff disagrees with those assertions, if Defendants attempt to rely on those or similar assertions, Defendants' failure to provide Plaintiff with any work as a substitute paraprofessional or any comparable position to her employment as a permanent paraprofessional since March 23, 2022 would instead constitute an unlawful constructive discharge as discrimination based on Plaintiff's disability, her association with a person with a disability, and/or familial status, discrimination based on Defendants' repeated failure to provide an accommodation, and retaliation in violation of the NJ LAD.

69.    Based on the foregoing, Defendant ESS discriminated against Plaintiff based on her disability and failed to reasonably accommodate her disability, in violation of the NJ LAD.

70.    Based on the foregoing, Defendant ESS discriminated against Plaintiff based on her association with an individual with a disability, in violation of the NJ LAD.

71.     Based on the foregoing, Defendant ESS discriminated against Plaintiff based on her familial status, in violation of the NJ LAD.

72.     Based on the foregoing, Defendant ESS retaliated against Plaintiff based on her engaging in protected activity, including opposing discriminatory conduct, making multiple requests for reasonable accommodations and/or exercising her right to request a reasonable accommodation of her disability, and exercising her right to medical leaves, in violation of the NJ LAD.

73.     Based on the foregoing, Defendant Smith unlawfully aided and abetted Defendant ESS' discrimination against Plaintiff based on her disability, failure to accommodate her disability, association with an individual with a disability, and familial status, and Defendant ESS' retaliation for engaging in protected activity in violation of the NJ LAD.

74.     Due to Defendants' unlawful conduct, Plaintiff has suffered the loss of her job and the opportunity to work, the loss of her past wages and future wages, the loss of benefits that she would be receiving but for Defendants' unlawful conduct, and out of pocket expenses.

75.     Due to Defendants' unlawful conduct, Plaintiff has suffered substantial emotional harm, distress and suffering, mental anguish, embarrassment and humiliation at a time in which she felt especially vulnerable due to her medical condition and treatment.

76.     Defendants' unlawful conduct was also willful, wanton, and/or reckless conduct and/or done in conscious disregard of Plaintiff's rights under the NJ LAD, thereby justifying an award of punitive damages.

**FIRST CLAIM FOR RELIEF**
**(DISCRIMINATION – NJ LAD)**
**(AGAINST DEFENDANT ESS)**

77.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above

13

with the same force and effect as if fully set forth herein.

78.     Based on the foregoing, Defendant ESS discriminated against Plaintiff because of her disability, failure to accommodate her disability, association with an individual with a disability, and familial status, in violation of the NJ LAD.

79.     As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits and out of pocket expenses.

80.     As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

81.     As a proximate result of the discrimination described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

82.     Defendant ESS discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
**(RETALIATION – NJ LAD)**
**(AGAINST DEFENDANT ESS)**

83.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

84.     Based on the foregoing, Plaintiff for engaged in protected activity under the NJ LAD.

85.     Based on the foregoing, Defendant ESS retaliated against Plaintiff for engaging in protected activity in violation of the NJ LAD.

86.     As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits and out of pocket expenses.

87.     As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

88.     As a proximate result of the retaliation described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

89.     Defendant ESS retaliation against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### (AIDING AND ABETING UNLAWFUL CONDUCT – NJ LAD)
### (AGAINST DEFENDANT SMITH)

90.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

91.     Under the NJ LAD, it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

92.     Based on the foregoing, Defendant Smith aided and abetted Defendant ESS's discrimination against Plaintiff because of her disability, failure to accommodate her disability, association with an individual with a disability, and familial status, and Defendant ESS's retaliation for engaging in protected activity in violation of the NJ LAD.

93.     As a proximate result of the unlawful conduct described herein, Plaintiff has

suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, and out of pocket expenses.

94. As a proximate result of the unlawful conduct described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

95. As a proximate result of the unlawful conduct described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

96. Defendant Smith discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

## DEMAND FOR JURY TRIAL

97. Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Issuing an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

ii. Issuing a declaratory judgment that the practices complained of in this Complaint are unlawful under the NJ LAD;

iii. Awarding damages for, *inter alia*, compensatory damages for back pay, front pay (in lieu of reinstatement), all benefits to which Plaintiff would have been entitled to receive but for Defendants' unlawful conduct, out of pocket expenses, damages for emotional distress, pain and suffering, and other incidental and consequential damages;

iv.  Awarding reinstatement of Plaintiff to an equivalent position;

v.  Awarding punitive damages as permitted by law;

vi.  Awarding pre- and post-judgment interest as permitted by law;

vii.  Awarding all attorneys' fees incurred in prosecuting these claims;

viii.  Awarding all costs and expenses incurred in prosecuting these claims; and

ix.  Granting such other and further relief as this Court deems just and proper.

Dated:  Hauppauge, New York
October 12, 2023

ROMERO LAW GROUP PLLC
*Attorneys for Plaintiff*
490 Wheeler Road, Suite 250
Hauppauge, New York 11788
Tel.: (631) 257-5588
Email: dbarnhorn@romerolawny.com

By:  _____
DAVID D. BARNHORN, ESQ.

17